IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD J. KRYSTOPOWICZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-1673 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                     June 28, 2022

Edward J. Krystopowicz ("Plaintiff") seeks review of the Commissioner's

decision denying his applications for supplemental security income ("SSI") and child

disability benefits ("CDB").  For the reasons that follow, I conclude that the decision of

the Administrative Law Judge ("ALJ") is not supported by substantial evidence and

remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.        **PROCEDURAL HISTORY**

Plaintiff protectively filed for SSI on June 1, 2016, and CDB on December 20,

2016,[2] alleging disability from birth, January 31, 1987, as a result of attention deficit

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,
2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi
should be substituted for the former Commissioner of Social Security, Andrew Saul, as
the defendant in this action.  No further action need be taken to continue this suit
pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[2]In her decision, the ALJ states that Plaintiff filed the CDB application on October
29, 2016, and the SSI application on December 20, 2016.  Tr. at 24.  The Disability
Determination and Transmittal for each claim indicates a filing date of December 20,
2016 for the CBD claim, id. at 108, and a filing date of June 1, 2016 for the SSI claim.
Id. at 109.  I will rely on the Disability Determination and Transmittals for the protective
filing dates.

hyperactivity disorder ("ADHD"), a learning disability, glaucoma, digestive problems, and hypotonia.[3]  Tr. at 108, 109, 173, 179, 205.[4]  Plaintiff's applications were denied initially, id. at 110-13, 114-18, and Plaintiff requested a hearing before an ALJ, id. at 119, which took place on February 7, 2019.  Id. at 45-87.  On March 28, 2019, the ALJ issued her decision finding that Plaintiff was not disabled.  Id. at 24-40.  The Appeals Council denied Plaintiff's request for review on May 6, 2020, id. at 10-14, making the ALJ's March 28, 2019 decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1472.

Plaintiff commenced this action in federal court on April 8, 2021, Doc. 1,[5] and the matter is now fully briefed and ripe for review.  Docs. 12-14.[6]

## II.   LEGAL STANDARD

A disabled claimant is entitled to CDB based on an insured's earnings record if he can show he (1) is a child of the insured, (2) is dependent on the insured, (3) applies for benefits, (4) is not married, and (5) is under 18 or is 18 years old or older and had a

---

[3]Hypotonia is "a condition of diminished tone of the skeletal muscles, so that they have diminished resistance to passive stretching and are flaccid."  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 907.

[4]At the administrative hearing Plaintiff amended his alleged onset date to his 18th birthday, January 31, 2005.  Tr. at 52.

[5]Plaintiff requested and was granted additional time to file his appeal in the federal court.  Tr. at 2, 5.

[6]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 6.

disability before he became 22 years old.  20 C.F.R. § 404.350(a)(1)-(5); <u>see also</u> 42 U.S.C. § 402(d); <u>Ricci v. Apfel</u>, 159 F. Supp.2d 12, 16 n.3 (E.D. Pa. 2001).[7]  The definition of a disability for a CDB applicant aged 18 or older is the same definition used to determine a disability for purposes of SSI.  <u>See</u> 42 U.S.C. § 402(d)(1)(B)(ii) (referring to definition in 42 U.S.C. § 423(d)); <u>see also</u> <u>Ricci</u>, 159 F. Supp.2d at 16 (applying DIB disability standard for claim of CDB); <u>tr.</u> at 52 (ALJ explaining without objection that an adult disabled child case is evaluated under the adult standard for disability).

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.      Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe

---

[7]Plaintiff was 29 years old when his applications were filed.  His CDB application identified his mother, Catherine Krystopowicz, as the insured worker under whose benefits he alleged entitlement.  <u>Tr.</u> at 179.

impairment, the claimant has the RFC to perform his past
work; and

     5.    If the claimant cannot perform his past work,
then the final step is to determine whether there is other work
in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of his age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

     The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusion that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019)

(substantial evidence "means only – 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion'") (quoting Consolidated Edison Co. v.

NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.

Schaudeck, 181 F.3d at 431.

III.   **DISCUSSION**

A.   **ALJ's Findings and Plaintiff's Claims**

The ALJ found that Plaintiff suffers from the severe impairments of learning disorder, attention deficit disorder ("ADD"), autism spectrum disorder ("ASD"), and hypotonia. Tr. at 27.  In addition, the ALJ found that Plaintiff suffers from the non-severe impairments of glaucoma and irritable bowel syndrome, but that his intellectual disability and arm pain do not constitute medically determinable impairments. Id. at 27-28.  The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 28, and that Plaintiff retained the RFC to perform light work, with the following limitations:   avoid workplace hazards such as moving machinery, unprotected heights, and open flames; understand, remember, and carry out simple instructions; make simple decisions; occasional changes in the work setting; and occasional interaction with the public and coworkers. Id. at 30.  Based on the testimony of the VE, the ALJ found that Plaintiff could perform occupations such as laundry folder, office cleaner, and shipping and receiving weigher. Id. at 40.[8]

Plaintiff claims that the ALJ erred in (1) finding only moderate limitations in interacting and relating with others, adapting or managing oneself, and concentrating, persisting, or maintaining pace, (2) disregarding aspects of comprehensive testing done at LaSalle University's Evaluation and Assessment Program, (3) failing to address the

---

[8]The ALJ made no finding regarding Plaintiff's ability to perform past relevant work, referring to the "Expedited process" set forth in 20 C.F.R. §§ 404.1520(h) and 416.920(h).  Tr. at 39.

testimony from Plaintiff's mother, and (4) omitting some of Plaintiff's credibly established limitations in the RFC assessment and VE hypothetical, and also that (5) the ALJ's decision is invalid due to the unconstitutional appointment of the Commissioner.[9] Doc. 12.  Defendant responds that the ALJ's decision is supported by substantial evidence and that the challenge to the appointment of the Commissioner does not provide a basis for relief.  Doc. 13.  Plaintiff also filed a reply.  Doc. 14.

**B.**    **Plaintiff's Claimed Limitations**

Plaintiff was born on January 31, 1987, making him 29 at the time he filed his application, and 32 years old at the time of the ALJ's decision.  Tr. at 173, 179.  Plaintiff has an Associate's Degree from community college, where he was given accommodations such as the ability to tape lectures,[10] extra time to take tests, and a choice of rooms where he would be less distracted, id. at 54-55, and he attended business school and also had training as a mail clerk at Horizon House.  Id. at 55-56.[11]  At the time of the administrative hearing, Plaintiff explained that he was still in college, working on his Bachelor's Degree, and had recently changed his major to human society and history. Id. at 68-70.

At the hearing, Plaintiff explained that he has trouble lifting heavy objects and has problems with his balance.  Tr. at 59.  Plaintiff explained that it takes him longer than

---

[9]I have reordered Plaintiff's claims for ease of discussion.

[10]Plaintiff testified that he quickly learned that recording the lectures was not helpful and stopped.  Tr. at 73.

[11]Plaintiff was not placed in special education classes in high school.  Tr. at 388.

other people to understand things.  Id. at 63.  In addition, he is easily distracted and takes tests in a separate room from his classmates.  Id. at 64.  Plaintiff testified that he could not perform a job where he would be in close proximity to others, but that he can maintain concentration for a two-hour period.  Id. at 65.

Plaintiff's mother, Catherine Krystopowicz, with whom Plaintiff lives, also testified at the hearing.  Tr. at 75-79.  She explained that Plaintiff has "a very regimented home life."  Id. at 76.  He does his homework in a distraction-free environment.  Id.  She testified that he does not have any friends and does solitary things like riding his skateboard or walking.  Id.  Whether it is a lack of awareness or inability to communicate, Ms. Krystopowicz explained that she has to pick up on cues from her son when he is sick.  Id. at 78-79.  With respect to Plaintiff's attempts to obtain employment, she explained that Plaintiff went through a mailroom job training through Horizon House. Id. at 77-78.  After the training, Horizon House provided him with job leads for supportive jobs and explained that he could take public transportation to jobs, but nothing came of the leads.  Id. at 78-79.

C.    **Summary of the Medical Record**[12]

In August 2005, when Plaintiff was 18 years old, Robert H. Brick, Ph.D., conducted an evaluation to determine Plaintiff's level of intellectual functioning, general aptitudes, and vocational interests, relative to vocational training and field placement.  Tr.

---

[12]Plaintiff's claims focus primarily on his mental health/cognitive impairments and limitations imposed by such impairments.  Therefore, I will focus primarily on the records relevant to the assessment of those impairments.

at 314.  Dr. Brick noted Plaintiff's history of ADD/ADHD, hypotonia, limited fine motor skills, and limitations in balancing and gross motor coordination.  Id.[13]  Dr. Brick also noted that prior evaluations indicated that he had limited ability to sustain focus and concentration, poor organizational skills, and inconsistency in turning in assignments.  Id. at 320.  Based on testing results, the doctor noted gross limitations of motor control and accuracy and limited recall of graphic reproduction.  Id. at 315.  He performed within the borderline range of intelligence, and evidenced a mild-moderate reading dyslexia.  Id. at 316-17.  The doctor noted several instructional modifications required for Plaintiff to participate in classroom-style training, including a student to assist Plaintiff with note-taking, tutoring, reading literacy training, extra test-taking time, quiet location areas for testing, and that he be permitted to sit at the front of the class.  Id. at 318.

Based on testing performed in April 2005, Dr. Brick found that Plaintiff manifested "avoidant and . . . schizoid behaviors, [including] odd thought patterns, behavioral quirks and limited interpersonal effectiveness."  Tr. at 322.  The doctor also noted "limitations associated with rapid visual memory decay and slow learning 'curve' involved in acquiring mastery skills with both visual and verbal association tasks."  Id. In addition, the doctor noted Plaintiff's test results place him "well within the extremes of the ADD population, with marked deficits associated with the inattention and impulsivity indices."  Id. at 323.

---

[13]In April 2003, Plaintiff was referred to Elwyn, Inc., for a psychoeducational consultation, during which the testing revealed that Plaintiff has significant impairment in fine motor skills.  Id. at 399.

On December 27, 2013, employment rehabilitation specialist Lisa Francese from Horizon House Employment Services noted diagnoses of Learning Disability NOS (not otherwise specified), mild developmental dyslexia, and ADD, and noted a Global Assessment of Functioning ("GAF") score of 50.[14]  Tr. at 307.  Plaintiff had been referred to the mail/supply room training program to assess his general vocational level. Id. at 307, 309.  After the 20-day evaluation period, id. at 307, the evaluator found, "[g]iven [Plaintiff's] level of functioning, as demonstrated by him working at or below the workshop level, it is recommended that he find a position in as supportive environment as can be found where he can use his interpersonal and particular skills."  Id. at 309.

Throughout his treatment of Plaintiff from early 2015 through 2018, primary care physician Herbert Secouler, D.O., noted that Plaintiff's ADD or ADHD was stable and required no treatment.  Tr. at 327 (10/19/16), 328 (6/25/16), 329 (2/15/16), 330 (10/15/15), 331 (7/2/15), 332 (4/30/15), 333 (2/16/15), 518 (7/24/18), 521 (4/24/18), 526 (8/29/17), 529 (4/25/17), 532 (1/24/17).  Dr. Secouler's treatment notes indicate a

---

[14]The GAF score is a measurement of a person's overall psychological, social, and occupational functioning, and is used to assess mental health.  Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Text Revision (2000), at 32.  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id. at 34.  The DSM 5, which went into effect on May 18, 2013, eliminated reference to the GAF score.  However, the Commissioner continues to receive and consider GAF scores in medical evidence, see Administrative Message – 13066 (July 22, 2013), and an ALJ must consider a GAF score with all of the relevant evidence in the case file.  Nixon v. Colvin, 190 F. Supp.3d 444, 447 (E.D. Pa. 2016).

diagnosis of ASD as of November 27, 2018.  Id. at 512.  Dr. Secouler completed a

Physical Medical Opinion form on February 6, 2019, indicating that "[Patient] is unable

to function in work place.  He is inappropriate and has poor interpersonal skills."  Id. at

505.

On March 16, 2017, Brook Crichlow, Psy.D., conducted a Mental Status

Evaluation, tr. at 388-91, and a Medical Source Statement.[15]  Id. at 392-94.  Plaintiff's

mother reported to the doctor that Plaintiff had limited friends and difficulty interacting

with people, maintaining a line of conversation, and would engage in parallel play.  Id. at

389.  Dr. Crichlow noted focusing difficulties and problems completing tasks and

described Plaintiff as forgetful and disorganized.  Id.  On mental status examination

("MSE"), Dr. Crichlow noted that Plaintiff's motor behavior was restless, his receptive

language was poorly developed, and he had word-finding difficulty.  Id. at 389.  His

affect was inappropriate to speech and thought content, and he could not remember the

date.  Id. at 390.  Although his attention and concentration were intact, his recent and

remote memory skills were mildly impaired.  Id.  He had a limited general fund of

knowledge and his insight was poor.  Id.  Dr. Crichlow diagnosed Plaintiff with

unspecified neurodevelopmental disorder and unspecified ADHD.  Id. at 391.  In

addition, the doctor noted that Plaintiff would not be able to manage his own funds due to

decision-making and learning difficulties.  Id.

---

[15]Dr. Crichlow's notes indicate that Plaintiff's mother provided much of the information regarding Plaintiff's history and current functioning throughout the evaluation.  Tr. at 388-89.

In the Medical Source Statement, Dr. Crichlow found that Plaintiff had moderate limitations in all of the areas relating to understanding, remembering, and carrying out instructions, noting difficulties in focusing and completing tasks, forgetfulness, and disorganization. Tr. at 392. Similarly, the doctor found moderate limitations in Plaintiff's abilities to interact and respond appropriately, noting difficulties with social skills and his inappropriate affect and difficulties clarifying emotions. Id. at 393. However, Dr. Chrichlow found that Plaintiff's abilities to concentrate, persist, or maintain pace and adapt or manage oneself were unaffected by his impairment. Id.

On March 23, 2017, as part of the initial consideration of the application, James Vizza, Psy.D., found that Plaintiff suffered from neurodevelopmental disorders resulting in moderate limitation in the abilities to understand, remember, carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standard of neatness and cleanliness; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Tr. at 102-04.

11

On September 30, 2017, Brian Gallagher, Psy.D., conducted an evaluation "to determine [the] need for accommodations within university setting." Tr. at 403.[16]  Dr. Gallagher noted that Plaintiff "evidences a number of the characteristics/traits of autistic spectrum, speech delay, sensitivities to sensory stimuli, interpersonal deficits, [and the] need for routine." Id. at 405.  The doctor also noted that, although Plaintiff "functions somewhat independently[, he] would not be able to live completely independently." Id. at 403.  The doctor planned to complete a psychoeducational evaluation and consider treatment options for psychotherapy and a referral to a specialty clinic for autistic spectrum. Id. at 405.

In March and April 2018, Plaintiff underwent an evaluation over five days at La Salle University to assess his ASD and ADHD symptoms and make recommendations for academic accommodations.[17] Tr. at 407-31.  Plaintiff's inability to answer questions regarding his history and personal experiences was attributed to not remembering information and his lack of self-awareness. Id. at 414.  During the sessions, the interviewer(s) noted that he would smile and laugh to himself but was unable to describe what he was thinking about that he thought was funny. Id.  His full-scale IQ was in the low average range. Id. at 415.  The evaluators found that the diagnosis of ADHD was not warranted at the time of the evaluation as the symptoms of hyperactivity had subsided.

---

[16]Plaintiff did not understand why he went for the evaluation and Plaintiff's mother explained to the doctor the purpose for the evaluation. Id. at 403.

[17]The evaluators noted that Plaintiff's mother participated in the intake sessions because Plaintiff was unable to answer questions regarding his history and personal experiences. Id. at 414, 422.

Id. at 424.  The evaluators concluded that Plaintiff suffered from ASD, requiring support without accompanying intellectual impairment.  Id. at 426.  The recommendations for the school/work environment included giving him extra time on exams, providing step-by-step instructions for assignments and exams, providing powerpoint or lecture notes to him, tutoring, and vocational assistance.  Id. at 426-27.  They also recommended social skills training, individual therapy, and contacting autism related organizations to provide support and education.  Id. at 427.

      **D.**    **Plaintiff's Claims**

            1.    Moderate Limitations in the B Criteria

At the third step of the sequential evaluation, the ALJ must determine whether a claimant's impairments, considered alone or in combination, are of a severity to meet or medically equal the criteria of an impairment listed in the Listings.  With respect to the relevant mental health Listings, the B criteria requires that the claimant establish that his or her mental health impairment results in extreme limitation of one, or marked limitation of two, of the four areas of mental functioning:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02(B) (neurocognitive disorders); 12.10(B) (ASD); 12.11(B) (neurodevelopmental disorders).  An extreme limitation indicates that "[y]ou are not able to function in this area independently, appropriately, effectively, and on a sustained basis," id. § 12.00F(2)(e), whereas a marked limitation indicates that "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  Id. § 12.00F(2)(d).

Here, the ALJ found that Plaintiff had a moderate limitation in each of the

categories listed in the B criteria of each of the relevant Listings.  Tr. at 29-30.  A

moderate limitation indicates that "[y]our functioning in this area independently,

appropriately, effectively, and on a sustained basis is fair."  20 C.F.R. Pt. 404 Subpt. P,

App. 1 § 12.00F(2)(c).  Plaintiff complains that the ALJ erred in failing to find at least

marked limitation in three of the areas of mental functioning:  interacting and relating

with others, adapting or managing oneself, and concentrating, persisting, and maintaining

pace.  Doc. 12 at 6-22.  With respect to each, Plaintiff essentially argues that the ALJ

failed to properly consider the evidence regarding Plaintiff's mental health/cognitive

impairments.  Id.

a.   <u>Interacting and relating with others</u>

The area of interacting and relating with others

> refers to the abilities to relate to and work with supervisors,
> co-workers, and the public.  Examples include: cooperating
> with others; asking for help when needed; handling conflicts
> with others; stating own point of view; initiating or sustaining
> conversation; understanding and responding to social cues
> (physical, verbal, emotional); responding to requests,
> suggestions, criticism, correction, and challenges; and
> keeping social interactions free of excessive irritability,
> sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E(2).  In addressing this particular area of

mental functioning, the ALJ stated:

> In interacting with others, [Plaintiff] has a moderate
> limitation.  [Plaintiff] has [ASD], resulting in limitations in
> social interaction and communication, as evidenced by his
> presentation at several psychological evaluations, such as

14

responding in one-word answers and displaying inappropriate affect ([tr. at 322, 389, 404, 411, 414]).  He also shows little interest in interpersonal relationships ([id. at 425]).  However, he is content engaging in solitary activities and does not appear distressed by his lack of and limited social relationships ([id.]).  He appears friendly and cooperative on exam ([id. at 315, 321, 389, 404, 414]).  He has an interest in hobbies, such as skateboarding ([id. at 391, 404, 423]).  Although he has limited social relationships, he reports having friends that he hangs out with every few months ([id. at 389, 411,] Hearing Testimony).  At Horizon House, [Plaintiff] excelled in the customer service area independently and got along with the customers, as well as his supervisor, and occupational trainers ([id. at 308]).

Tr. at 29.

Although the ALJ failed to mention other evidence relevant to this area of functioning in her discussion of the Listings, she did so later in her decision in discussing Plaintiff's RFC.  See tr. at 34 (discussing diagnosis of ASD by Dr. Gallagher), 38 (discussing Dr. Crichlow's and Dr. Secouler's assessments).  An ALJ need not "use particular language or adhere to a particular format in conducting his analysis;" however, reading the ALJ's decision as a whole, there must be "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  It is the consideration of the evidence with which Plaintiff takes issue.  Doc. 12 at 7-11; Doc. 14 at 2-3.  Defendant responds that substantial evidence supports the ALJ's finding.  Doc. 13 at 19-20.

According to the opinion weighing paradigm applicable to Plaintiff's case,[18] a treating physician's opinion is entitled to be given greater weight than that of a physician

---

[18]Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence, eliminating the assignment of weight to

who conducted a one-time examination of the claimant as a consultant.  See, e.g., Adorno v. Shalala, 40 F.3d 43, 47-48 (3d. Cir. 1994) (citing Mason v. Shalala, 994 F.2d 1058, 1067 (3d. Cir. 1993)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as he does not "reject evidence for no reason or for the wrong reason."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Plummer v. Apfel, 196 F.3d 422, 429 (3d Cir. 1991); see also 20 C.F.R. § 404.1527(c)(4); 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  Also, a physician's statement that a Plaintiff is "disabled" or "unable to work" is not dispositive.  Adorno, 40 F.3d at 47-48; see also 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Rather than blindly accept a medical opinion, the ALJ is required to review all the medical findings and other evidence and "weigh the relative worth of [the] treating physician's report."  Adorno, 40 F.3d at 48.

Here, a number of the mental health/cognitive treatment providers that have examined Plaintiff have noted his deficiencies in socialization skills.  See tr. at 404 (Dr. Gallagher), 389, 393 (Dr. Crichlow), 419-22 (La Salle report).  Particularly relevant to Plaintiff's ability to interact with others, the ALJ gave the March 2017 opinion of Dr.

---

any medical opinion.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because Plaintiff's application was filed prior to the effective date of the new regulations, the opinion-weighing paradigm is applicable.  Compare 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed prior to March 27 2017) with §§ 404.1520c, 416.920c (applicable to claims filed on or after March 27, 2017).

Crichlow, finding consistently moderate limitations in this area, "great weight," id. at 38 (citing id. at 392-93), while rejecting Dr. Secouler's February 2019 assessment that Plaintiff is "incapable of even low stress work and unable to function in a workplace because he is inappropriate and has poor interpersonal skills." Id. at 38 (citing id. at 504-05). One of the problems with this determination is that Dr. Crichlow's assessment predates Plaintiff's diagnosis with ASD.

Moreover, the ALJ also noted that Dr. Secouler's assessment is "not consistent with other evidence." Tr. at 38. However, there is other evidence in the record noting that Plaintiff's actions/affect were inappropriate. For example, the evaluators at LaSalle noted that Plaintiff smiled and laughed to himself during the evaluation without being able to explain the basis for the laughter. Id. at 414. Dr. Crichlow noted that Plaintiff's affect was "inappropriate to speech and thought content" id. at 390, and Plaintiff "was smiling inappropriately at times during the evaluation despite discussing behavioral difficulties and mental health issues." Id. at 389. Dr. Gallagher noted an "inappropriate affect at times laughing at questions that were not funny." Id. at 404. Similarly, Dr. Gallagher and the evaluators at La Salle noted poor interpersonal or socialization skills. Id. at 403, 420; see also id. at 322 (Dr. Brick noting "limited interpersonal effectiveness). In addition, the ALJ overlooked the fact that Plaintiff's mother intervened at each of these mental health evaluations because Plaintiff was unable to explain why he was being evaluated and could not interact with the provider. Thus, I conclude that the ALJ rejected Dr. Secouler's assessment for the wrong reason.

The ALJ also relied on the December 2013 Diagnostic Summary from Horizon House Employment Service, where Plaintiff was evaluated "to gauge [his] academic and cognitive function, as well as his potential now, for competitive employment, and his ability to gain employment." Tr. at 307. In the evaluation, Employment Rehabilitation Specialist  Francese noted that Plaintiff "excelled in the customer service area . . . and got along with the customers, as well as his supervisor, and occupational trainers." Id. at 308. However, Plaintiff argues that Horizon House is "a sheltered work environment" and is not indicative of the ability to perform substantial gainful activity. Doc. 14 at 1-2 (citing 20 C.F.R. § 404.1573). It does not appear from the report that Plaintiff was working at a competitive level, as it was noted that he was working "at or below workshop level" and it was recommended that he find "a position in as supportive environment as can be found." Tr. at 309. In addition, the assessment included a notation that Plaintiff "could use improvement in appropriate grooming and dressing, and be more professionally directed" and recommended that he be assigned to a Vocational Rehabilitation Counselor for training. Id. at 308-09. Thus, the report does not support Plaintiff's ability to perform "substantial gainful activity" in a work setting. See White v. Colvin, Civ. No. 12-241, 2014 WL 66417, at 10 (W.D. Pa. Jan. 8, 2014) (noting that the need for vocational rehabilitation and supportive job placement may indicate a greater degree of functional limitation).

In addition, the records from Horizon House also include a GAF score of 50, indicating serious symptoms. Tr. at 307. The ALJ did nothing more than mention this score, without reconciling it with the record or the other notes from Horizon House. See

id. at 33.  As previously mentioned, although the DSM 5 has eliminated the GAF scale, the Commissioner continues to receive and consider GAF scores in medical evidence, <u>see</u> Administrative Message – 13066 (July 22, 2013), and an ALJ must consider a GAF score with all of the relevant evidence in the case file.  <u>Nixon</u>, 190 F. Supp.3d at 447.  Thus, I find the ALJ's repeated reliance on the notes from Horizon House problematic.  <u>See</u> <u>tr.</u> at 29 (addressing Plaintiff's abilities to interact with others and concentrate, persist, or maintain pace).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993) (citing <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983)).

The ALJ's consideration of the mental health treatment evidence is relevant not only to the determination of regarding the Listings, but also in determining his RFC. Therefore, even if proper consideration of the evidence would result in a finding of moderate limitation in the ability to interact with others, reconsideration of this evidence may impact the RFC determination that Plaintiff can have occasional interaction with the public and coworkers or may limit Plaintiff's interaction with supervisors.

b.    <u>Adapting and managing oneself</u>

The area of adapting and managing oneself

> refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.  Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to

> a work setting; and being aware of normal hazards and taking
> appropriate precautions.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E(4).  In determining that Plaintiff has a

moderate limitation in this area of mental functioning, the ALJ stated,

> As for adapting and managing oneself, [Plaintiff] has
> experienced a moderate limitation.  [Plaintiff] reportedly lives
> a regimented lifestyle ([tr. at 412], Hearing Testimony).
> However, his mother also noted that [Plaintiff] has become
> more flexible in adulthood ([id.]).  In addition, Horizon
> House noted that [Plaintiff] showed improved ability to
> handle frequent changes ([id. at 308]).  [Plaintiff] is also
> capable of performing personal care needs independently ([id.
> at 376, 390]).  Although he has difficulty communicating
> emotions, he does not demonstrate any deficits in regulating
> emotions or controlling behavior ([id. at 315, 321, 389, 404,
> 407-31]).

Tr. at 29.[19]  Plaintiff takes issue with the ALJ's consideration of the evidence relevant to

this area of functioning.  Doc. 12 at 12-18.  Defendant argues that the ALJ's

determination is supported by substantial evidence.  Doc. 13 at 21-22.

I find the ALJ's consideration of the relevant evidence deficient.  Specifically,

based on testing performed in March and April 2005, Dr. Brick found that Plaintiff's

performance on testing placed him "well within the extremes of the ADD population,

with marked deficits associated with the inattention and impulsivity indices."  Tr. at 323.

The ALJ's discussion of these results was limited to a mention of "extreme ADD-

associated patterns," which Dr. Brick determined were "neurological and not

psychological."  Id. at 32 (citing id. at 324).  Whether psychological or neurological, such

---

[19]Additional discussion of records relating to this area of functioning is contained
later in the ALJ's decision, which as I have noted is permissible.  See supra at 15.

deficits must be considered in determining whether Plaintiff meets or equals a Listing and in determining Plaintiff's RFC.  In addition, the testing performed at La Salle indicated that Plaintiff scored low in "adaptive behavior," which the ALJ noted, id. at 35 (citing id. at 423), but failed to consider in finding that Plaintiff had only a moderate limitation in this area of functioning.[20]  The ALJ should explain her consideration of Dr. Brick's analysis and conclusions and the testing results from the La Salle evaluation providing support for Dr. Brick's assessment.  On remand, the ALJ should reconsider all of the relevant evidence in considering Plaintiff's limitations in this area of mental functioning and in determining Plaintiff's RFC if necessary.

> c.      Concentrate, persist, or maintain pace

The area of mental functioning dealing with concentration, persistence, and maintaining pace

> refers to the abilities to focus attention on work activities and
> stay on task at a sustained rate.  Examples include:  Initiating
> and performing a task that you understand and know how to
> do; working at an appropriate and consistent pace; completing

---

[20]With respect to the testing performed at La Salle, Plaintiff argues that his score of 61 on the Vineland Adaptive Behavior Scale, which is more than two standard deviations below the mean, compels a finding of a marked limitation in this area.  Doc. 12 at 15-16; Doc. 14 at 6 (citing 20 C.F.R. § 416.926a(e)(2)(I)).  Defendant did not directly address this argument, stating only that the ALJ discussed the Vineland Adaptive Behavior Scale score in the low range.  Doc. 13 at 21.

The regulation that Plaintiff cites addresses functional equivalence for children and focuses on the "domains of functioning" utilized in determining child disability cases (acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being).  The regulation does not address the areas of mental functioning listed in the B criteria of the Listings relevant to mental health.  However, the ALJ's failure to explain her consideration of the testing results from LaSalle does require remand.

tasks in a timely manner; ignoring or avoiding distractions
while working; changing activities or work settings without
being disruptive; working close to or with others without
interrupting or distracting them; sustaining an ordinary
routine and regular attendance at work; and working a full
day without needing more than the allotted number or length
of rest periods during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E(3).  In determining that Plaintiff has a

moderate limitation in this area, the ALJ stated:

> With regard to concentrating, persisting, or maintaining pace,
> [Plaintiff] has a moderate limitation.  [Plaintiff] has a history
> of ADD or ADHD but a recent psychological exam indicated
> no diagnosis warranted at this time ([tr. at 424]).  His deficits
> in maintaining attention and focus appear related to autism
> and lack of interest in environment ([id.]).  However, he has
> demonstrated normal concentration and attention on [MSEs,]
> including a consultative exam ([tr. at 390, 514, 517, 520, 525,
> 531]).  In addition, primary care notes indicate that ADHD is
> stable without medication ([id. at 327-40, 518, 521, 526,
> 532]).  Horizon House noted that [Plaintiff] performed well
> with repetitive tasks, worked independently, and followed
> directions ([id. at 308]).

Tr. at 29.

The ALJ's determination that Plaintiff has a moderate limitation in this area of

mental functioning suffers from the same problem as her conclusion regarding adapting

and managing oneself.  The ALJ has ignored the import of Dr. Brick's determination that

Plaintiff's testing results placed him "well within the extremes of the ADD population,

with marked deficits associated with the inattention and impulsivity indices."  Tr. at 323

(emphasis added).

Moreover, although the ALJ discussed the evaluation performed at LaSalle

generally, see tr. at 34-36, the ALJ failed to consider Plaintiff's test results specifically

addressing attention and concentration.  The evaluators noted that Plaintiff's

"performance was indicative of clinically significant attentional issues commonly

observed in ADHD populations . . . .   In other words, the chances are 99.9 out of 100 that

a significant attentional problem exists."  Id. at 421.  On remand, the ALJ should consider

all of the evidence in determining Plaintiff's limitations in concentration, persistence, and

pace and provide explanation for such consideration.[21]

> 2.    Plaintiff's Mother's Testimony

Plaintiff next complains that the ALJ failed to address the testimony of Plaintiff's

mother.  Doc. 12 at 22-23; Doc. 14 at 4-5.  Defendant responds that the ALJ addressed

Ms. Krystopowicz's testimony as required by Burnett v. Commissioner of Social

Security, 220 F.3d 112, 119 (3d Cir. 2000).  Doc. 13 at 23.  Burnett requires the ALJ to

"consider and weigh all of the non-medical evidence before [her] . . . [and] explain why

[s]he is rejecting the testimony."  220 F.3d at 122 (citing Van Horn v. Schweiker, 717

F.2d 871, 873 (3d Cir. 1983); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981)).  Here,

although the ALJ recited portions of Ms. Krystopowicz's testimony, tr. at 31, she did not

explain what weight she gave the testimony.  Having already determined that the case

---

[21]Plaintiff next complains that the ALJ disregarded crucial evidence.  Doc. 12 at
21-22.  Discussion of this claim is subsumed in my discussion of the ALJ's findings with
respect to the B criteria of the mental health Listings.  However, I note that in her
decision, the ALJ provided a chronological recitation of the evidence and concluded that
after Plaintiff's job training at Horizon House in December 2014, "[t]he record indicates
no further significant evidence."  Tr. at 33.  This statement is particularly troubling
because the Horizon House assessment predated both Dr. Gallagher's diagnosis of ASD
in September 2017, and the detailed April 2018 LaSalle report.

must be remanded for further consideration of the mental health treatment evidence, I also remand the case for further consideration of this witness's testimony.

### 3.        Omission of Limitations from the RFC

Plaintiff next argues that the ALJ omitted some of Plaintiff's credibly established limitations from the RFC assessment and the questions posed to the VE.  Doc. 12 at 23-26.  Plaintiff also complains that the jobs identified by the VE are inconsistent with the RFC as stated by the ALJ because the reasoning level for two of the jobs is beyond the ability to understand, remember, and carry out simple instructions.  Doc. 12 at 25; Doc. 14 at 7.[22]  Because I have determined that the case must be remanded for further consideration of the relevant evidence, which will require reconsideration of Plaintiff's RFC, I need not discuss omissions from the RFC at this time or whether the jobs identified are consistent with the RFC assessment.  However, I note that there seems to be an inconsistency or omission in the ALJ's RFC assessment.  The ALJ noted that Dr. Brick's testing indicated deficits in "right-hand fine motor speed and/or coordination." Tr. at 32 (citing id. at 324).  Specifically, Dr. Brick found Plaintiff's fine motor

---

[22]The VE identified three jobs based on the ALJ's hypothetical:  laundry folder, office cleaner, and shipping and receiving weigher.  Tr. at 82.  The VE stated that all three jobs had an SVP of 2.  Id.  Special Vocational Preparation ("SVP") levels "measure the skill level necessary to perform a particular job."  Zirnsak, 777 F.3d at 616 (citing S.S.R. 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)).  "Unskilled work corresponds to an SVP level of 1-2."  Id.  Here, the ALJ found that Plaintiff was capable of understanding, remembering, and carrying out only simple instructions, which Plaintiff claims is inconsistent with an SVP of 2.

skills/speed were "sub par."  Id. at 323.[23]  Despite recognizing this limitation, the ALJ did

not include any limitations regarding fine motor coordination in the RFC assessment nor

did she cite any evidence undermining this conclusion.  On remand, the ALJ should

address this finding by Dr. Brick and either explain her reasoning for rejecting it or

include such limitation in the RFC assessment.

4.    Constitutionally Defective Decision

Finally, Plaintiff complains that the appointment of the Commissioner, from

whom the ALJ derived her authority, was constitutionally infirm. Doc. 12 at 4-6.

Defendant concedes that the statute governing the appointment of the Commissioner

violates the separation of powers because the President may remove the Commissioner

only for good cause.  Doc. 13 at 4.  However, Defendant denies that this provides a basis

for remand.  Id. at 4-18.  Because I have already determined that the case must be

remanded for further consideration, I need not address this issue further at this time.

## IV.   **CONCLUSION**

The ALJ failed to properly consider the mental health/cognitive treatment

evidence impacting both her consideration of the relevant mental health Listings and

Plaintiff's RFC.  The ALJ should consider all of the relevant evidence, including the

evaluation performed at La Salle and Ms. Krystopowicz's testimony.  In addition, the

---

[23]Dr. Brick's finding is consistent with testing done at Ellwyn, Inc., when Plaintiff was 16 years old, which indicated "significant impairment of product quality on tasks that require control of fine motor skills."  Tr. at 399.

ALJ should explain her consideration of the fine motor limitations noted by Dr. Brick and include a limitation in the RFC assessment if warranted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD J. KRYSTOPOWICZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-1673 |
| Commissioner of Social Security | : | |

**O R D E R**

AND NOW, this   28th  day of June, 2022, upon consideration of Plaintiff's

request for review (Doc. 12), the response (Doc. 13), Plaintiff's reply (Doc. 14), and after

careful consideration of the administrative record (Doc. 9), IT IS HEREBY ORDERED

that:

1.   Judgment is entered REVERSING the decision of the Commissioner of
     Social Security for the purposes of this remand only and the relief sought
     by Plaintiff is GRANTED to the extent that the matter is REMANDED for
     further proceedings consistent with this adjudication; and

2.   The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

/s/ Elizabeth T. Hey
ELIZABETH T. HEY, U.S.M.J.